Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RYAN, <br><br> Plaintiff, <br><br> vs. <br><br> GIGCAPITAL3, INC., AVI KATZ, RALUCA DINU, NEIL MIOTTO, JOHN MIKULSKY, ANDREA BETTI-BERUTTO, and PETER WANG, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff John Ryan ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.  This is an action brought by Plaintiff against GigCapital3, Inc. ("GigCapital3" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants")

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which GigCapital3 will combine with privately-held Lightning Systems, Inc. ("Lightning"), through GigCapital3's subsidiary Project Power Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.   On December 10, 2020, GigCapital3 issued a press release announcing that GigCapital3 and Lightning had entered into a Business Combination Agreement dated December 10, 2020 (the "Business Combination Agreement"). Under the terms of the Business Combination Agreement, Merger Sub will merge with and into Lightning, with Lightning continuing as a wholly owned subsidiary of GigCapital3 (the "Business Combination"). Upon closing of the Business Combination, Lightning stockholders will receive 53,922,000 shares of GigCapital3 common stock, with the right to receive up to an additional 16,463,096 shares of GigCapital3 common stock if certain share price thresholds are achieved within five years of closing of the Business Combination.

3.   In connection with the Proposed Transaction and concurrently with the execution of the Business Combination Agreement, GigCapital3 entered into a subscription agreement for a private investment in public equity ("PIPE") transaction with BP Technology Ventures, Inc. (the "PIPE Investor"). The PIPE Investor has agreed to purchase an aggregate of 2,500,000 shares of GigCapital3 common stock for $10.00 per share in a private placement for an aggregate purchase price of $25,000,000.

4.   Upon completion of the Proposed Transaction, the combined company will have an implied pro forma equity value of approximately $823 million at closing. It is anticipated that upon completion of the Proposed Transaction: (i) GigCapital3's existing public stockholders, excluding the PIPE Investor, will retain an ownership interest of approximately 24.3% in the combined

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

company; (ii) Lightning stockholders will own approximately 65.5% of the combined company; (iii) the PIPE Investor will own approximately 3% of the combined company; and (iv) GigCapital3's initial stockholders (including GigAcquisitions3, LLC (the "Sponsor")) will own approximately 7.2% of the combined company.  The combined company will be named Lightning eMotors, Inc. and will be listed on the New York Stock Exchange under the ticker symbol "ZEV."

5. On December 31, 2020, GigCapital3 filed a Registration Statement on Form S-4 (as amended on February 4, 2021, the "Registration Statement") with the SEC.  As set forth below, the Registration Statement, which recommends that GigCapital3 stockholders vote in favor of the Proposed Transaction, omits material information, which renders the Registration Statement false and misleading.  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. In short, unless remedied, GigCapital3's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

8. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

10.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of GigCapital3.

11.     Defendant GigCapital3 is a Delaware corporation with its principal executive offices located at 1731 Embarcadero Road, Suite 200, Palo Alto, California 94303.  The Company is a special purpose acquisition company formed for the purpose of effecting a merger, stock exchange, acquisition, reorganization or similar business combination with one or more businesses. GigCapital3's common stock trades on the New York Stock Exchange under the ticker symbol "GIK."

12.     Defendant Avi Katz ("Katz") has served as Executive Chairman of the Board, Chief Executive Officer ("CEO"), President, and Secretary of the Company since February 2020.

13.     Defendant Raluca Dinu ("Dinu") has been a director of the Company since February 2020.

14.     Defendant Neil Miotto ("Miotto") has been a director of the Company since February 2020.

15.     Defendant John Mikulsky ("Mikulsky") has been a director of the Company since February 2020.

16.     Defendant Andrea Betti-Berutto ("Betti-Berutto") has been a director of the Company since February 2020.

17. Defendant Peter Wang ("Wang") has been a director of the Company since February 2020.

18. Defendants identified in paragraphs 12-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Lightning is an electric vehicle designer and manufacturer that provides complete electrification solutions for commercial fleets – from Class 3 cargo and passenger vans to Class 6 work trucks, Class 7 city buses, and Class 8 motor coaches. The Lightning team designs, engineers, customizes, and manufactures electric vehicles to support the wide array of fleet customer needs, with a full suite of telematics, analytics, and charging solutions to simplify the buying and ownership experience and maximize uptime and energy efficiency.

20. Merger Sub is a Delaware corporation and a wholly owned subsidiary of GigCapital3.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. GigCapital3 is a public investment vehicle formed for the purpose of effecting a merger, acquisition, or similar business combination. The Company was founded by a group of current and former business and financial leaders. GigCapital3 raised $200,000,000 of net proceeds in its initial public offering ("IPO") in May 2020. Following its IPO, GigCapital3's activity has been limited to the evaluation of business combination candidates.

22. On December 10, 2020, GigCapital3 and Lightning issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> LOVELAND, Colo.--Lightning eMotors ("Lightning eMotors" or the "Company"), a leading provider of complete electrification solutions for commercial fleets, and GigCapital3, Inc. ("GIK" or "GigCapital3") (NYSE: GIK), a Technology, Media and Telecom (TMT) Private-to-Public Equity (PPE)™ corporation, today announced they have entered into a definitive agreement for a business combination that will result in

Lightning eMotors becoming a publicly listed company. Upon closing of the transaction, the combined operating company will be named Lightning eMotors, Inc. and will be listed on the New York Stock Exchange under the ticker symbol ZEV.

Lightning eMotors is a high-growth electric vehicle manufacturer focused on urban commercial zero-emission vehicles. Lightning eMotors is the only operator with a full range of Class 3-7 battery-electric and fuel cell electric vehicles in production today, addressing the large and growing fleet electrification market. The Company's unique modular architecture, software-enabled platform, and integration capabilities provide a scalable, cost-effective solution to a highly segmented and customized market. Lightning eMotors' complete electrification solutions cover medium- and heavy-duty vocational vehicles including ambulances, delivery trucks, bucket trucks, food trucks, school buses and coach buses, among others. Lightning eMotors' significant time-to-market advantages over competitors have enabled the Company to capture a diverse base of blue-chip fleet customers, including Fluid Trucks, ABC Companies, ACE Parking and California State Hospitals. Currently, Lightning eMotors has a contracted order backlog of approximately 1,500 vehicles for delivery in 2021 and 2022, including the world's first fuel cell electric Class 6 truck. Lightning eMotors has the country's largest commercial zero-emission fleet vehicle manufacturing facility in the U.S. with annual production capacity of 1,000 vehicles today and expanding to 3,000 in 2021 and over 20,000 by 2025.

Lightning eMotors' co-founder and chief executive officer Mr. Tim Reeser said, "Today marks an important step forward in Lightning eMotors' mission to lead the commercial medium-duty zero-emission vehicle market. Over the last 12 years, Lightning eMotors has built its modular hardware and software platform, partnering with fleets all over the U.S. to develop best-in-class zero-emission battery-electric and fuel cell electric commercial solutions. With an estimated worldwide annual total addressable market opportunity of $67 billion for Class 3-7 vehicles, we see tremendous demand from fleets to transition their commercial vehicles from internal combustion engines to zero-emission solutions at an attractive total cost of ownership, even without state and federal grants. With municipal regulations creating zero-emission zones in 30-plus cities worldwide and corporate mandates for zero emissions at many of the largest fleet operators in the world, Lightning eMotors is poised to capitalize on the regulatory and social shift to environmentally friendly commercial vehicles. We are excited to partner with GigCapital3 and leverage their extensive entrepreneurial, operational, and capital markets expertise, as we scale the business as a public company. The capital raised in this transaction will enable Lightning eMotors to accelerate its growth plans and fulfill significant demand from our customers, including some of the most recognizable transportation, public safety, and e-commerce companies in the United States."

"GigCapital3 is thrilled to partner with Lightning eMotors, using our Private-to-Public Equity (PPE)™ platform, where GigCapital3 brings its management's well-recognized and decades-long technology public-market operational and entrepreneurial expertise to enable the successful transition of a high-growth EV company like Lightning eMotors to a publicly traded entity," said Dr. Raluca Dinu, founding managing partner of GigCapital Global and board member of GigCapital3.

"Tim and his exceptional management team have successfully built out a proprietary, cost-efficient modular architecture, which is scalable and protected by robust IP that is far ahead of its competition.  As a public company, Lightning eMotors will have a stronger capital structure to invest in capacity expansion, develop additional technology—both organically and through acquisitions.  The combination of Lightning eMotors and GigCapital3 brings unique, attractive, and promising opportunities to all stockholders and stakeholders, while substantiating our commitment to support one of the highest impact mega-trends of our lifetime, electrification of mobility solutions.  We look forward to working with the Lightning eMotors team to build the industry leading zero-emission commercial EV company."

**Leadership Team**

The combined company will be led by Mr. Tim Reeser, who has founded and managed multiple technology and cleantech companies; Mr. Bill Kelley, Lightning eMotors' chief technology officer and chief operating officer, an automotive industry veteran with more than 35 years of automotive engineering and manufacturing experience at Borg Warner; and Ms. Teresa Covington, who will be its chief financial officer and who has 25 years of public company finance experience at automotive, defense and aerospace companies.  The Lightning eMotors team has already shown its ability to deliver by successfully bringing products to market and capturing a dominant share in a nascent but rapidly growing industry.  Mr. Robert Fenwick-Smith and Dr. Avi Katz will serve as co-chairmen of the board of directors of the combined company, which will include an additional seven members, including Mr. Reeser, Dr. Raluca Dinu, Mr. Ted Senko, Mr. Neil Miotto and a member to be named by BP Technology Ventures at a later date. Mr. Senko and Mr. Miotto, who is the current chairman of the GigCapital3 audit committee, will serve as independent directors and audit committee members. Collectively, these seven individuals will nominate the remaining two independent members of the board.

**Transaction Overview**

Pursuant to the business combination, GigCapital3 will acquire Lightning eMotors through a reverse merger.  The business combination values Lightning eMotors at approximately $823 million pro forma equity value, at $10.00 per share.  The transaction will be funded by (i) the issuance of approximately $539 million in new common stock of GigCapital3 to current holders of Lightning eMotors securities, (ii) cash from the GigCapital3 trust account of approximately $202 million, assuming no redemptions by GigCapital3's stockholders, and (iii) Transaction supported by $125 million of gross proceeds from the issuance of equity and convertible financings in a Private Investment in Public Equity (PIPE) transaction, including a commitment from BP Technology Ventures and other leading institutional investors.  Following the transaction and after the payment of transaction expenses, Lightning eMotors is expected to add over $270 million of cash to its balance sheet.  Assuming no redemptions of GigCapital3 shares, the current holders of Lightning eMotors securities will hold approximately 66% of the issued and outstanding shares of common stock immediately following the close of the transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The boards of directors of both Lightning eMotors and GigCapital3 have unanimously approved the proposed business combination, which is expected to be completed in the first half of 2021, subject to, among other things, the approval by GigCapital3's stockholders, satisfaction of the conditions stated in the definitive agreement, including regulatory approvals, and other customary closing conditions, including a registration statement being declared effective by the U.S. Securities and Exchange Commission (the "SEC").

**The Registration Statement Contains Material Misstatements or Omissions**

23. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to GigCapital3's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to exercise their redemption rights and whether to vote their shares in favor of the Proposed Transaction.

24. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the potential conflicts of interest faced by the Company's financial advisors, Oppenheimer & Co. Inc. ("Oppenheimer") and Nomura Securities International, Inc. ("Nomura"); and (ii) the background of the Proposed Transaction. Accordingly, GigCapital3 stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Advisors' Potential Conflicts of Interest*

25. The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors, Oppenheimer and Nomura.

26. For example, the Registration Statement sets forth that the Company engaged Oppenheimer and Nomura to serve as joint placement agents in connection with the PIPE financing and as "exclusive joint financial advisors to the Company in connection with the proposed Business Combination." *Id.* at 145. The Registration Statement fails, however, to disclose: (i) the amount of

compensation Oppenheimer and Nomura have received or will receive in connection with their engagements; (ii) the amount of Oppenheimer's and Nomura's compensation that is contingent upon the consummation of the Proposed Transaction; and (iii) the details of any past services Oppenheimer and Nomura have performed for any parties to the Business Combination Agreement or their affiliates, including the timing and nature of such services as well as the amount of compensation received by Oppenheimer and Nomura for providing such services.

27. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

28. The omission of this information renders the statements in the "Background of the Business Combination" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

29. The Registration Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

30. For example, the Registration Statement fails to disclose whether the non-disclosure agreements the Company entered into with more than 10 potential target businesses include standstill provisions that are still in effect and/or are "don't ask, don't waive" standstill provisions.

31. The Registration Statement sets forth that "[i]n addition to Lightning Systems, we delivered draft term sheets or preliminary proposals, some at a high level early in discussions, to 3 other prospective targets, but executed term sheets with none of them." Registration Statement at 143. The Registration Statement fails to disclose in what type of business each of the three prospective targets was engaged.

32. The Registration Statement fails to disclose the methodology underlying the $1 billion pre-money valuation for Lightning set forth in the September 13, 2020 process letter.

33. Moreover, the Registration Statement sets forth:

> During the period between November 13, 2020 and November 17, 2020 that the Company was working with Oppenheimer and Nomura on a potential convertible note financing, Lightning Systems informed the Company that it was in the process of revising some of the financial projections previously provided to the Company for fiscal year 2020. On November 18, 2020, Ms. Dinu informed Mr. T. Reeser via e-mail that, as a result of these intended revisions to previous projections, and to further enhance internal controls for the post-combination company, the Company would require that Neil Miotto join the New Lightning eMotors Board as the co-chairman of the audit committee and that both companies should evaluate additional corporate governance measures that should be taken following the Closing of the Business Combination.
>
> * * *
>
> On November 29, 2020, and following discussions between Drs. Dinu and Katz and representatives of Lightning Systems between November 18, 2020 and November 28, 2020 regarding Lightning Systems' financial projections, a representative of BofA Securities delivered to representatives of the Company the updated financial projections of Lightning Systems that had been discussed were being undertaken a couple of weeks earlier and which Lightning Systems finalized following the discussions with Drs. Dinu and Katz. These updated financial projections lowered the amount of projected revenues, gross profit and EBITDA for the periods of 2020 through 2025 from what had been initially provided to the Company.

*Id.* at 149-150. The Registration Statement fails, however, to disclose the set of financial projections previously provided to the Company, as well as a quantification of the revisions incorporated into the projections delivered to the Company on November 29, 2020.

34. The Registration Statement also fails to disclose whether Oppenheimer and Nomura performed any financial analyses for Company management and the Board in connection with their engagements as financial advisors to the Company, and if so, a fair summary thereof.

35. The omission of this material information renders the statements in the "Background of the Business Combination" and "The Company Board's Reasons for the Approval of the Business

Combination" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the deadline to exercise redemption rights and the stockholder vote on the Proposed Transaction, Plaintiff and the other GigCapital3 stockholders will be unable to make an informed decision whether to exercise their redemption rights and whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the potential conflicts of interest faced by the Company's financial advisors and the background of the Proposed Transaction. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction and whether to exercise their redemption rights.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of GigCapital3 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GigCapital3, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

47. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, GigCapital3's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of GigCapital3, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to GigCapital3 stockholders;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 8, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
   -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*